UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT PEARSON,

                              Plaintiff,

                v.

C.O. CAPPELLI, *et al.*,

                         Defendants.

No. 24-CV-8254 (KMK)

OPINION & ORDER

Appearances:

Robert Pearson
Alden, NY
*Pro se Plaintiff*

Stephanie Tunic Midler, Esq.
County of Orange Law Department
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Robert Pearson ("Plaintiff") brings this Action against the County of Orange and certain employees and correctional officers at the Orange County Correctional Facility ("Defendants"). Before the Court is Defendants' Motion to Dismiss. Because Plaintiff's failure to exhaust his administrative remedies is evident from the face of the Amended Complaint, the Court grants the Motion without prejudice.

### I.  Background

#### A.  Factual Background

The following facts are drawn from the Amended Complaint and, where incorporated by reference,[1] the original Complaint, and assumed true for the purposes of this Motion.  On October 3, 2024, Plaintiff arrived at Orange County Correctional Facility ("OCCF").  (Am. Compl. ("AC") 9 (Dkt. No. 23).)  When he arrived, corrections officers instructed him to "take everything [he] had on[,] off," and "to get on an X-Ray."  (*Id.*)  Plaintiff did so.  (*Id.*)  The facility's nurses, after speaking with Plaintiff and studying his X-ray results, told Plaintiff he would have to "go to the outside hospital" because he had "something [presumably some foreign object] inside of [him]," (*id.*), in his throat or stomach, (Compl. 7 (Dkt. No. 1)).  Officers then took Plaintiff to a hospital in Middletown, New York.  (AC 9.)  At the hospital, Plaintiff refused an EKG scan from a doctor.  (*Id.*)  Plaintiff then returned to OCCF, where nurses and a doctor were waiting.  (*Id.*)

While a nurse suggested Plaintiff should return to the hospital, (Compl. 7), the doctor "told the [Sergeant] to put [Plaintiff] on a dry cell order" because the doctor "believed [Plaintiff] ha[d] something inside of [him]," and "mental health" placed plaintiff on a "mental health 1on1," "because of something [t]hey said [Plaintiff] did back in 2021."[2]  (AC 9–10.)  The doctor

---

[1] The claims are the same in the second Complaint; while the primary change is to incorporate the Court's *Valentin* order, the Amended Complaint makes reference to the original, which has more detailed factual allegations.  (*See* AC 11 ("Everything I said that happen[ed] to me[,] happen[ed] to me as I said it in the first [filing].").)  In light of the incorporation-by-reference and Plaintiff's *pro se* status, the Court will consider both.  *See Burton v. City of New York Police Dep't*, No. 14-CV-7158, 2014 WL 7427534, at *1 n.1 (E.D.N.Y. Dec. 30, 2014) ("Although an amended complaint completely replaces a complaint, given Plaintiff's *pro se* status, the Court considers both the Complaint and Amended Complaint.").

[2] "A 'dry cell order' refers to a temporary restriction on running water within an inmate's cell such that it allows the officers to inspect the contents of any excrement for contraband.  It is

believed Plaintiff had swallowed a bottle. (Compl. 7.) The facility followed the doctor's

recommendation and placed Plaintiff on the one-on-one watch and dry cell order. (AC 9.)

While these conditions were in effect, Plaintiff was also subjected to a cavity search. (Compl. 9.)

Employees at the facility repeatedly asked if Plaintiff had swallowed a bottle, and subjected him

to additional "X-ray machine" scans to confirm. (*Id.* 9–10.) Plaintiff alleges he has suffered

mentally and emotionally from this incident, and in particular, from being closely supervised in

intimate moments during the dry cell order while one defendant, Sergeant Gessner, "call[ed]

[him] names." (AC 10–11.) This incident occurred sometime between October 3 and October 5,

2024. (*Id.* at 9.)

B.  Procedural History

Plaintiff brought this Action on October 29, 2024. (*See* Compl.) The Court granted his

request to proceed *in forma pauperis*, that is, without prepayment of fees, on December 9, 2024.

(*See* Order (Dkt. No. 8).) On February 3, 2025, the Court dismissed Plaintiff's claims against the

State of New York and Orange County Jail, and added as a defendant the County of Orange.

(*See* Order (Dkt. No. 11).) The Court also directed service on the named defendants and,

pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), directed the Orange County

Attorney to ascertain the identities and service addresses of the unnamed defendants so they

could be served. (*Id.* 7–10.) On March 26, 2025, the Orange County Attorney complied with the

---

not a complete restriction as the inmates are allowed access to water periodically under close watch supervision." (Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 5 n.6 (Dkt. No. 34).)

The Court, like Defendants, understands a "1on1" to mean a "1-on-1 suicide watch," *i.e.*, when a guard is assigned to monitor an inmate at imminent risk of suicide. (*See* Defs.' Mem. 5.) As for who recommended Plaintiff for the suicide watch, the Court understands "mental health" to refer to mental healthcare providers at OCCF.

Court's *Valentin* order.  (*See* Letter to Court (dated March 26, 2025) (Dkt. No. 19).)  Plaintiff then amended his Complaint to add the previously unnamed Defendants.  (*See* AC.)  Defendants moved to dismiss on August 15, 2025.  (*See* Mot. to Dismiss (Dkt. No. 34); Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 34).)  Plaintiff did not file any opposition papers. (*See generally* Dkt.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

4

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012))).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submissions "liberally and interpret [them] to raise the strongest arguments that [they] suggest[]." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y.

Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.   Analysis

Defendants argue Plaintiff failed to exhaust his remedies under the Prison Litigation Reform Act, that his failure to do so is plain from the face of the Complaint, and that the Court should accordingly grant their Motion.  (*See* Defs.' Mem. 15.)

Because Plaintiff brought this suit while in custody at the Orange County Correctional Facility, and his suit is "with respect to prison conditions under [§] 1983," 42 U.S.C. § 1997e(a), it is subject to the Prison Litigation Reform Act's ("PLRA") exhaustion requirements.  *See Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009) ("The Supreme Court has stated that the phrase 'prison conditions' in the PLRA refers to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); *see also United States v. Al-Marri*, 239 F. Supp. 2d 366, 367 n.1 (S.D.N.Y. 2002) (explaining that courts in the Second Circuit have held the PLRA applies to pretrial detainees).  The PLRA requires "that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a

6

lawsuit." *Jones v. Bock*, 549 U.S. 199, 204 (2007).  This requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," and "has the potential to . . . improve the quality of suits that are filed by producing a useful administrative record." *Id.*

"PLRA exhaustion is a standard affirmative defense," and "not a pleading requirement," so "inmates are not required to specially plead or demonstrate [compliance with its] exhaustion [requirements] in their complaints." *Perttu v. Richards*, 605 U.S. 460, 469 (2025) (quotation marks and citations omitted).  However, where failure to exhaust a prison's grievance remedies is plain from the face of the complaint, courts grant motions to dismiss under 12(b)(6) on that basis.  *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[A] district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."); *see also McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) ("[I]f nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.").

Here, the Court received Plaintiff's initial Complaint by mail on October 29, 2024, so it was initiated then at the latest.  (*See* Compl. 1.)  That date is about three-and-a-half weeks from the alleged incident (October 3 or 5).  (*See* AC 9.)  Defendants point the Court to New York's state prison grievance procedures to argue it "is indisputable that Plaintiff could not plausibly have exhausted his administrative remedies as to the grievance in only twenty-six days" from the incident to the filing of the Complaint.  (Defs.' Mem. 16.)  As the Court reads the regulations Defendants cite, the Court agrees.  The first review of a grievance within the inmate's facility takes slightly more than two weeks.  *See* 9 N.Y.C.R.R. § 7032.4 (requiring inmates to file

grievances within five days of an incident; requiring the grievance coordinator to issue a written determination within five days of the receipt of a grievance; allowing inmates two days to appeal; and giving the chief administrative officer five days to decide the appeal, all for a maximum total of 17 days from the date of incident to a final determination of an appeal). The next phase, in which inmates may appeal the chief administrative officer's decision to the State Commission of Correction, takes longer. *See* 9 N.Y.C.R.R. § 7032.5 (inmates have three business days after receiving the chief administrative officer's determination to appeal; the grievance coordinator must transmit it to the Commission's Citizens' Policy and Complaint Review Council within three business days; and that body has 45 days from receiving the determination to issue its own decision). Exhaustion requires seeing these procedures through to the end. *See McWillis v. Cnty. of Orange*, No. 17-CV-4805, 2018 WL 3038497, at *5 (S.D.N.Y. June 19, 2018) ("[P]laintiff did not appeal the grievance appeal decision to the Citizen's Policy and Complaint Review Council, as required to exhaust administrative remedies at OCJ."); *Kearney v. Gebo*, No. 15-CV-253, 2017 WL 61951, at *2 (N.D.N.Y. Jan. 4, 2017) (holding only if "all three . . . levels of review are exhausted"—*i.e.*, the initial review, appellate review within the facility, and the final level of review—"then the prisoner may seek relief in federal court pursuant to section 1983").

From the face of his Complaint, it is implausible Plaintiff could have completed this entire process in the three-plus weeks between the incident and when he brought his Action. *See Stokes v. de Blasio*, No. 17-CV-7890, 2019 WL 132279, at *3 (S.D.N.Y. Jan. 8, 2019) ("[P]laintiff could not have participated in the entire grievance process before filing his complaint. . . . Because it is clear from the face of the plaintiff's complaint that the plaintiff has failed to exhaust his available administrative remedies, the defendants' motion to dismiss is

8

granted." (citing *Cary v. City of N.Y.*, No. 17-CV-6443, 2018 WL 1581988, at *3 (S.D.N.Y. Mar. 27, 2018)); *see also Price v. City of New York*, No. 11-CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) ("[G]iven the timelines for the grievance procedure outlined in the DOC's regulations, it would have been impossible for him to [pursue the full procedure] in the 21 days between the alleged incident and the filing of his complaint." (applying New York City prison grievance exhaustion requirements with similar, if not shorter, timelines)).[3]  Accordingly, the Court grants Defendants' Motion and need not consider their remaining arguments.

### III.  Conclusion

For the reasons discussed herein, the Court grants Defendants' Motion to dismiss, without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 34) and close this case.  While the Court does not grant leave to amend because amendment would be futile, see *supra* note 3, this dismissal is without prejudice to Plaintiff bringing a *new* action concerning this incident after having exhausted his administrative remedies.  *See Perez v. City of New York*, No. 14-CV-7502, 2015 WL 3652511, at *5 (S.D.N.Y. June 11, 2015) ("Plaintiff is advised that, because he did not exhaust his administrative remedies,

---

[3] Plaintiff did file an Amended Complaint in response to this Court's *Valentin* order months later.  (*See* AC.)  But that Plaintiff amended his Complaint—particularly since it asserts the same claims—does not alter the PLRA inquiry, which the text of the statute explains is focused on when an *action is brought*, a date that did not change when Plaintiff amended his Complaint.  42 U.S.C. § 1997e(a) ("No *action* shall be *brought* with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." (emphasis added)); *see also Malibu Media, LLC v. Doe*, No. 18-CV-10956, 2019 WL 1454317, at *3 (S.D.N.Y. Apr. 2, 2019) "[W]here the plaintiff's initial complaint had been filed before the statute said an action could be 'brought,' filing an amended complaint in the same action could not cure the defect." (citing *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172 (2d Cir. 2018)); *see also Prescott v. Annetts*, No. 09-CV-4435, 2010 WL 3020023, at *4 (S.D.N.Y. July 22, 2010) ("The word 'brought' means *commenced*. . . . Plaintiff 'brought' this action when he filed his initial complaint on May 8, 2009, and was assigned a docket number.  He did not 'commence' or 'institute' this action when he subsequently amended his complaint.").

the Complaint is dismissed without reaching the merits of his claims for violations of the First,

Eighth and Fourteenth Amendments. . . . Plaintiff's claims are dismissed without prejudice.").

SO ORDERED.

DATED:        March 26, 2026
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE